James B. TRIPP, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14856.

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

Frank Grayson, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Reid Robison, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

James B. Tripp, hereinafter referred to as defendant, was charged, tried, and convicted in the Court of Common Pleas of Oklahoma County for the crime of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor; his punishment was fixed at six months imprisonment in the county jail and a fine of $25.00, and he appeals.

For its evidence the State relied on the testimony of two Oklahoma Highway Patrolmen. Trooper Charles Annis testified that he was driving west on the Stanley Draper Crosstown Expressway at a point east of the Robinson Street Exit at approximately 11:00 p. m. on the evening of February 4, 1968, at which time he spotted defendant's car heading east in the westbound lane, coming directly toward him; he stopped the vehicle, determined defendant was drunk, and placed him under arrest; that he radioed for assistance and Trooper L. G. Enterline, the State's second witness, responded. Trooper Enterline's testimony was that he helped remove defendant's car from the Expressway, and took defendant to the county jail where he was booked.

For his defense, defendant called Helen McClure, who testified defendant was under medical treatment at the time; that a Dr. Bailey of Mayfair Medical Clinic had prescribed certain medication for defendant. The Court sustained the State's objection to the defense attempt to introduce into evidence two prescription bottles. Defendant testified he had been taking four different kinds of medicine which were prescribed by the doctor and purchased by his sister at Langsam Drug; that he had been taking such medicine since January 23, 1968. After marking the prescription bottles for identification purposes, the court again sustained the State's objection to the introduction of same, but permitted introduction of a letter from the doctor confirming four different medications had been prescribed for defendant.

On appeal defendant urges that the exclusion of certain bottles that contained, or had contained, defendant's prescription medicines, was reversible error. The State contends that the exclusion of the bottles as incompetent, irrelevant, and immaterial, was not error, as they were irrelevant, and at best were cumulative evidence. We are of the opinion that under the facts here presented, the State's position is correct. In the body of the Attorney General's brief, appears the following recitations of fact and authorities which we believe are determinative of this issue:

"Patrolman Charles Annis testified that in his expert opinion defendant was drunk (R 22, 25). (This term is used herein exclusively to mean intoxicated by *liquor,* as distinguished from intoxication by *drugs.*) The Trooper testified that defendant was approaching him on the wrong side of a divided Interstate Highway (R 21), that upon descent from his vehicle defendant staggered on his feet, and that from defendant's speech and odor he appeared drunk (R 21, 22). Pursuant to a check of the automobile the Trooper found a 'fifth bottle of Vodka * * * probably three-fourths gone' (R 22).

The Tropper further testified that defendant could not 'motivate by himself. I had to take him by the arm and take

him in a direct course to the patrol car. He was staggering out in the roadway' (R 24). The Trooper further testified that defendant admitted that the reason defendant was on the wrong side of the highway was that 'he just had too much to drink' (R 25).

Highway Patrol Trooper C. G. Enterline testified defendant was 'staggering—very unsteady on his feet. In fact, I led him by the arm from the patrol unit into the elevator' (R 36). Trooper Enterline further testified that there was a strong alcoholic odor on defendant's breath, and that his opinion as to the cause of defendant's condition was that defendant had been drinking (R 37).

Defendant's own witnesses substantiated defendant's propensity to 'nip the bottle,' with Helen McClure, sister of the defendant, testifying that she would check defendant's bottles to 'know how much he was drinking, sir.' (R 44). She testified she did this because she was interested in defendant (R 44). The defendant himself admitted drinking on Sunday, February 4, 1968, the day in question (R 50, 67).

The evidence set out above, together with all the other testimony at trial, clearly gave the jury ample basis for finding defendant guilty as charged, that is, guilty of operating a motor vehicle while under the influence of intoxicating *liquor*. Defendant does not object to the *sufficiency* of the evidence, and this court in Woods v. State, [92] Okl.Cr. [139], 220 P.2d 463, clearly held:

'2. Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh evidence and determine the facts.

3. The function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis in evidence, on which a jury can reasonably conclude that accused is guilty as charged.'

There is no problem here with a refused request for *election,* as the State clearly moved against the defendant on the *liquor* offense, not on *drugs*.

The issue of defendant's prescribed medications was before the jury at length, and they had every opportunity to decide that the drug issue had injected a reasonable doubt as to whether or not defendant had become intoxicated by liquor. The court's instructions 2, 4, 5, and 6 clearly outlined the jury's duty to apply the facts to determine defendant's intoxication by liquor.

As a matter of record, testimony on the issue of defendant's theory that he had actually been intoxicated by drugs and not liquor, was had at length and is to be found at pages 30, 38, 44–46, 53–57, 62–64, and 68. In the course of this testimony, by way of showing the issue of drugs was sufficiently before the jury, defendant's sister testified: (R 44, 45)

'Q. I will ask you whether or not your brother, here, was under medical treatment at that time?

A. Yes, he was at that time.

Q. What doctor, if you know?

A. Doctor Bailey, Mayfair Medical Clinic.

THE COURT: Which Clinic was that?

A. Mayfair Medical Clinic.

MR. GRAYSON: Will you mark this exhibit, please?'

(The instrument was thereupon marked Defendant's Exhibit No. 1 for the purpose of identification.)

'Q. (By Mr. Grayson) Mrs. McClure, I will ask you to look this over carefully and tell me whether or not you ever saw this bottle before?

A. Yes, sir.

Q. What is the date on that bottle?

A. The 24th of January, '68.

Q. Does the bottle show what doctor prescribed that medicine?

A. Yes, sir, Doctor Bailey, sir.

Q. Does it show who he prescribed it for?

A. Yes, sir.

Q. Who was that for?

A. Jim Tripp.

Q. Do you know, of your own knowledge, what was in the bottle?

A. Yes, sir.

Q. What was in this bottle?

A. Tablets to help him sleep.

Q. In other words, sleeping pills, is that right?

A. Yes, sir.'

The defendant testified, (R 53)

'Q. Mr. Tripp, were you or were not under medical treatment at this time?

A. I was.

Q. Did you or did you not know what was wrong with you?

A. I had a real bad case of the flu.

Q. Had you or had you not been taking medicine?

A. I had four different kinds.

Q. Did you or did you not purchase this medicine yourself?

\*     \*     \*     \*     \*     \*

A. Yes, I did, or my sister actually got the prescription, filled by the doctor's prescription.

Q. Do you know where it was purchased?

A. Yes, sir.

Q. Where?

A. Langsam Drug at Mayfair Heights.

Q. Do you or do you not know any of the contents of the medicine you were taking?

A. One was an antibiotic, two were tranquilizers, and one was a sleeping tablet.

Q. How long have you been taking this?

A. Since the 23rd of January.'

In addition, defendant's exhibit No. 5 (R 56) was admitted. This exhibit was a letter from Dr. A. Stanley Bailey which read,

'This is to certify that I saw the above individual for a flu infection on January 23, 1968, in my office. I gave him two prescriptions to be filled on that date. I also gave a prescription by phone on the 24th of January for Mr. Tripp.

In my absence on the 27th of January Dr. Andrews prescribed by phone another prescription.'

Defendant now objects because the bottles themselves were denied admission into evidence. The State had not controverted the fact of defendant's prescription, and had not controverted the defense contention that defendant had been taking the medications on the day in question. The State proved to the jury beyond a reasonable doubt that defendant had been intoxicated by liquor, and the bottles would be irrelevant on the key issue of whether the intoxication had been from drugs.

Had defense counsel been serious in the attempt to show the intoxication had occurred by drugs, he would have introduced expert testimony to that effect, and not bottles of pills more or less empty that may not have been consumed on the day in question.

Further, the existence of the bottles, the existence of the prescription, and the doctor's statement stood uncontroverted on the record. The vast amount of testimony to the effect that there were prescription bottles (undoubtedly the jury actually saw them when they were denied admission) would be sufficient to place the drug issue before the jury. The bottles themselves, if at all relevant to the critical issue of causation, would then have been cumulative, and objectionable as incompetent, irrelevant, and immaterial.

This court has held, consistent with the universally accepted proposition, that 'The exclusion of evidence which is proved by other evidence, and is only cumulative, and would not change the results of the trial, is not error.' Phelps v. State, 64 Okl.Cr. 240, 78 P.2d 1068. Other cases on this point, cited in *Phelps* are Graham v. State, 25 Okl.Cr. 372, 220 P. 967; Addington v. State, 8 Okl.Cr. 703, 130 P. 311. In *Addington* this court said:

'The last assignment is that the court further erred in refusing to allow witness W. H. Neal to testify as to the general reputation of the deceased for violence. The state objected, for the reason that no proper foundation had been laid in this: That the witness has not stated that he knew that the deceased lived at the place named, and that the time was too remote, being three or four years prior thereto.

*If the court's ruling was erroneous, we think it was harmless, as the defense was allowed to offer proof as to decedent's reputation while living at Idabel; and the testimony of these witnesses was not contradicted by any evidence offered by the state.* "The exclusion of evidence, whether it is or is not competent, is harmless, where it reasonably appears that its admission would not have affected the verdict." And: "The exclusion of evidence to prove particular facts is harmless, if the facts sought to be proved are subsequently proved by other evidence and it is apparent that the evidence excluded could not have changed the result." ' (Emphasis supplied)

Here, as in *Addington*, the State did not contradict the testimony, sought to be cumulated—in the instant case, the physical existence of the bottles. The State further continues to maintain the physical existence of the bottles was irrelevant to the question of causation of the intoxication."

In the light of the testimony, supra, we are of the opinion that the defendant's evidence relating to his defense was before the jury and we seriously doubt that the admission or rejection of the empty or near-empty bottles could have materially affected the outcome of the case, for it was at most cumulative evidence.

For all of the reasons above set forth, the judgment and sentence is

Affirmed.

BRETT, P. J., and NIX, J., concur.